LAW OFFICES OF

## JOSHUA L. DRATEL, P.C.
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10005
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL                                                 STEVEN WRIGHT
—                                                      *Office Manager*
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

October 4, 2013

**BY HAND**

**FILED UNDER SEAL**

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                       Re:     *United States v. Zubair Tahir,*
                                       10 Cr. 923 (DLC)

Dear Judge Cote:

      This letter constitutes the sentencing submission on behalf of defendant Zubair Tahir, whom I represent by CJA appointment in the above-entitled case.[1]  For the reasons set forth below,

      it is respectfully submitted that Mr. Tahir should receive a sentence of "time served," consistent with the recommendation in the Pre-Sentence Report (hereinafter "PSR"), which represents a reasonable sentence in this case.[2]

---

[1]

[2] While Mr. Tahir is eligible to receive a sentence of probation, a "time served" sentence is more technically appropriate given that Mr. Tahir served one day in federal custody prior to his release on bail.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 2 of 15

    A sentence of time served would be "sufficient but not greater than necessary" to achieve the objectives of sentencing set forth in 18 U.S.C. §3553(a)(2), and would account for these several mitigating factors detailed below:

(1)

(2)     the punishment and hardship Mr. Tahir has already suffered as a result of his conviction in this case, including the loss of his livelihood and his business, ostracism in his community and the inability to obtain employment, fear for the safety of his family and himself, and the need to take a position at company, and thus to travel frequently and live apart from his wife and daughter in order to provide for his family and to continue to pay for his daughter's college education;

(3)     Mr. Tahir's tenuous physical health, including his struggle with high blood pressure and diabetes, which would render any further term of imprisonment far more onerous for him, thereby magnifying and aggravating the effect of any term of imprisonment;

(4)     Mr. Tahir's family is completely financially dependent on him.  As a result, any term of imprisonment would destroy his family's financial stability;

(5)     Mr. Tahir's sterling record as a hard-working and law-abiding citizen in the more than three years since his July 13, 2010, arrest and release on bail, such that the imposition of any term of imprisonment at this point would not serve the goals of sentencing, and would only interrupt his rehabilitation, and therefore be counterproductive; and

(6)     that the actual and/ or intended losses as a result of Mr. Tahir's offense conduct are mitigated – and therefore loss calculations under the Guidelines are reduced – by the fact that after foreclosure on the house at 60 Webster Avenue, in Jersey City, New Jersey, the victim was able to recoup $96,000 in losses through its

LAW OFFICES OF                                    Hon. Denise L. Cote
**JOSHUA L. DRATEL, P.C.**                        United States District Judge
                                                  Southern District of New York
                                                  October 4, 2013
                                                  Page 3 of 15

August 12, 2011, sale of that property.

Thus,                                              analysis of the sentencing factors listed in 18 U.S.C. §3553(a), a "time served" sentence best achieves the statutory objectives of sentencing.

**I.     *The Principles Governing Federal Sentencing Since* United States v. Booker, *543 U.S. 220 (2005), Require the Court to Look Beyond the Guidelines In Order to Arrive at a Sentence Sufficient But Not Greater Than Necessary to Achieve the Purposes of Sentencing Set Forth in 18 U.S.C. §3553(a)(2)***

In *Pepper v. United States*, ___ U.S. ___, 131 S. Ct. 1229 (2011), the Court *twice* emphasized that a sentencing judge assumes "an overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id*., at 1242, 1243. *See also United States v. Dorvee,* 604 F.3d 84, 93 (2d Cir. 2010) ("[u]nder §3553(a)'s 'parsimony clause,' it is the sentencing court's duty to 'impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth' at 18 U.S.C. §3553(a)(2)"), *quoting United States v. Samas,* 561 F.3d 108, 110 (2d Cir. 2009).

As the Second Circuit explained in *Dorvee*,

> [e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors. *See* [*United States v.*] *Cavera,* 550 F.3d [180,]189 [(2d Cir. 2008) (*en banc*)].

604 F.3d at 93. *See also Pepper*, ___ U.S. at ___, 131 S. Ct. at 1244-45 (statute – 18 U.S.C. §3742(g)(2) – precluding consideration, at re-sentencing, of post-sentence rehabilitation was invalid because it had the effect of making the Guidelines mandatory in "an entire set of cases").

Thus, as the Supreme Court declared in *Nelson v. United States*, 550 U.S. 350 (2009), "[t]he Guidelines are not only *not mandatory* on sentencing courts;  they are also not to be *presumed* reasonable." *Id*., at 351 (emphasis in original).[3] *See also Dorvee*, 604 F.3d at 93 ("[i]n

---

[3] While the Supreme Court's ruling in *Rita v. United States*, 551 U.S. 338 (2007), established that a within-Guidelines sentence can be presumptively reasonable, *id.* at 347, that

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 4 of 15

conducting this review [of the §3553(a) sentencing factors], a district court needs to be mindful of the fact that it is 'emphatically clear' that the 'Guidelines are guidelines – that is, they are truly advisory'"), *quoting Cavera,* 550 F.3d at 189.

Indeed, in *Pepper*, Justice Sotomayor again hearkened back to *Koon v. United States*, 518 U.S. 81 (1996) – as Justice Stevens had in *Rita v. United States*, 551 U.S. 338, 364 (2007) (Stevens, J., *concurring*) – repeating that

> "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

___ U.S. at ___, 131 S. Ct. at 1239-40, *quoting Koon*, 518 U.S. at 113.

Therefore, while sentencing judges must still consider the Guidelines, *see* 18 U.S.C. §3553(a)(4), nothing in the statute provides any reason to treat that calculation as more controlling of the final sentencing decision than any of the other factors a court *must* consider under §3553(a) as a whole. *See United States v. Menyweather*, 431 F.3d 692, 701 (9th Cir. 2005); *United States v. Lake*, 419 F.3d 111, 114 (2d Cir. 2005), *explaining United States v. Crosby*, 397 F.3d 103, 111-13 (2d Cir. 2005).

Also, as Justice Scalia noted in his dissent from the "remedial" opinion in *United States v. Booker,* 543 U.S. 220 (2005):

> [t]he statute provides no order of priority among all those factors, but since the three just mentioned [§§ 3553(a)(2)(A), (B) & (C)] are the fundamental criteria governing penology, the statute – absent the mandate of § 3553(b)(1) – authorizes the judge to apply his own perceptions of just punishment, deterrence, and protection of the public even when these differ from the perceptions of the Commission members who drew up the Guidelines.

543 U.S. at 304-305 (Scalia, J., *dissenting in part*).

---

presumption is restricted to appellate review and "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id.* at 351 (*citing United States v. Booker*, 543 U.S. 220, 259-60 (2005)). *See also Nelson*, 550 U.S. at 351.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 5 of 15

Moreover, the Supreme Court has been vigilant in ensuring that the Guidelines are genuinely advisory, and not merely a default sentence ratified by appellate courts by rote.  For example, in *Nelson*, 550 U.S. at 350, the Court *twice* remanded the Fourth Circuit's decision(s) that affirmed a sentence even though the District Court had stated that while the Guidelines were not mandatory, they enjoyed a presumption of "reasonableness."[4]  *See also Pepper*, ___ U.S. at ___, 131 S. Ct. at 1236-40.

Thus, in *Nelson*, the Court reiterated that "district judges, in considering how the various statutory sentencing factors apply to an individual defendant 'may not presume that the Guidelines range is reasonable.'"  550 U.S. at 351, *quoting Gall v. United States*, 552 U.S. 38, 50 (2007); *see also id*. ("[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable").

The broad discretion afforded district courts to determine a sentence also conforms with 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  *See also United States v. Murillo*, 902 F.2d 1169, 1172 (5th Cir. 1990); *Jones*, 531 F.3d at 172, n. 6.

In fact, in *Pepper*, the Court cited §3661 as an important means of achieving just sentences:  "[p]ermitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'"  ___ U.S. at ___, 131 S. Ct. at 1240, *quoting Wasman v. United States,* 468 U.S. 559, 564 (1984).[5]

---

[4]  *See* 237 Fed.Appx. 819 (4th Cir. 2007) and 276 Fed.Appx. 331 (4th Cir. 2008).

[5]  Indeed, the Court's opinion in *Pepper* opened with the following statement:

> [t]his Court has long recognized that sentencing judges "exercise a wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant-if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."

___ U.S. at ___, 131 S. Ct. at 1235, *quoting Williams v. New York,* 337 U.S. 241, 246-247 (1949).

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 6 of 15

As the Supreme Court directed in *Gall*, 552 U.S. at 49, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party."

Thus, here,                                                                 via analysis and application of the §3553(a) factors, the Court possesses sufficient discretion to impose a sentence of "time served."[6]

---

[6] In fact, the most recent statistics issued by the United States Sentencing Commission with respect to the second quarter of Fiscal 2013, in *U.S. Sentencing Commission Preliminary Quarterly Data Report*, 2d Quarter Release, Preliminary Fiscal Year 2013 Data, Through March 31, 2013, disclose that in the Southern District of New York 69.6% of all sentences are *outside* the Guidelines, with only 1% of all sentences being above the Guidelines. Thus, 68.6% of all sentences in SDNY are *below* the Guidelines. The *Quarterly Data Report* is available at <http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/Quarterly_Sentencing_Updates/USSC_2013_Quarter_Report_2nd.pdf>.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 7 of 15

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 8 of 15

**III.**   *Application of the §3553(a) Factors Also Compels a Sentence of "Time Served"*

    In applying to Mr. Tahir both §3553(a)'s mandate that a sentence be "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in" §3553(a)(2), and the sentencing factors set forth in §3553(a)(1)-(7), it is respectfully submitted that a sentence of time served is the appropriate sentence in this case.[7]

---

    [7] The sentencing factors enumerated in §3553(a) are:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    need for the sentence imposed –

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for –

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .];

    (5)    any pertinent policy statement [. . .];

    (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Denise L. Cote<br>United States District Judge<br>Southern District of New York<br>October 4, 2013<br>Page 9 of 15 |

      In considering those prescribed sentencing factors and identified purposes of sentencing,[8] several aspects of Mr. Tahir's circumstances are relevant. Either independently or in combination, they amply justify a sentence of "time served."

      A.      *Mr. Tahir's History and Characteristics*

      Mr. Tahir was born July 6, 1964, in Pakistan, and was raised there by his parents along with his five siblings. PSR, at ¶ 51. He graduated high school in 1980. *See id*., at ¶ 65. After attending a government-run university in Pakistan for two years, he came alone to the U.S. at age 21, in the hopes of attending college or obtaining employment here, because job opportunities for graduates of public universities, in Pakistan, were extremely limited. *See id*.

      When he arrived in the U.S., Mr. Tahir lived in Brooklyn for ten years, working as a limousine driver. *See id*., at ¶ 72. He subsequently relocated to Pennsylvania to lease a Citgo Gas Station with a business associate. *See id*., at ¶ 71. After five years, Mr. Tahir and his partner decided that high operating costs had rendered the business untenable. *See id*. Mr. Tahir then moved to New Jersey, where he still resides, and took ownership of a photo developing shop in downtown Manhattan, which closed after 9/11, at which point he and three partners started Globe Construction, Inc., the business involved in the instant offense (and which was rendered insolvent in 2010). *See id*., at ¶ 68.

      Despite his immigration to the United States, Mr. Tahir has consistently returned to Pakistan every two-to-three years to visit with his parents and several of his siblings who still

---

          (7)      the need to provide restitution to any victims of the offense.

[8] Section 3553(a)(2) lists the following purposes of sentencing:

(2)      the need for the sentence imposed –

      (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)      to afford adequate deterrence to criminal conduct;

      (C)      to protect the public from further crimes of the defendant; and

      (D)      to provide the defendant with needed educational or vocational training, medical care, or correctional treatment in the most effective manner.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 10 of 15

reside there.  *See id*., at ¶ 55.  During one such visit in 1991, Mr. Tahir married            ,
as a result of an arrangement between their parents.  *See id*., ¶ 55.

     Although pending immigration matters forced Mr. Tahir's wife to remain in Pakistan after their marriage, the two had a daughter,            in 1992, and in 1995, Mr. Tahir's wife and daughter joined him in the United States.  *See id*.

     Today, all three family members are naturalized U.S. citizens.  *See id*.  Mr. Tahir's daughter is currently a junior at            University, and lives on campus.  *See id*., at ¶ 56.  His wife, who does not speak English, is not employed.  *See id*., at ¶ 57.  Thus, while both Mr. Tahir's wife and his daughter have remained supportive of him throughout his case, it remains uncertain how the two would be able to cope financially if Mr. Tahir is incarcerated.  *See id*.

     Indeed, even since Mr. Tahir's arrest, and despite his subsequent release on bail, his family's financial situation has been precarious.  Mr. Tahir's work at Globe Construction, Inc., had constituted his family's sole means of financial support, but once his business went under                        , he was ostracized by his community and could no longer find work within it.  *See id*., at  ¶¶ 67, 74.  Finally, in June 2013, after obtaining a modification of his bail conditions to permit travel outside the state of New Jersey, Mr. Tahir was able to begin working as a warehouse manager at            company, which has required him to travel frequently to the company's        location.  *See id*., at ¶ 66.

     Mr. Tahir's guilty plea to the instant offense represents his sole conviction.  *See id*.,  at ¶ 50.  Since his July 13, 2010, release on bail, and throughout his three years at liberty, he has remained entirely law-abiding and has complied fully with the conditions of his pre-trial release.

    **B.**    ***Mr. Tahir Has Already Suffered Severe Consequences As a Result of His Conduct,                         , and Further Punishment Is Not Necessary to Deter Future Criminal Conduct, Nor to Protect the Public***

     As noted **ante**, Mr. Tahir's conviction cost him his livelihood,                                     .  Indeed, Mr. Tahir has struggled greatly over the three years since his arrest,         to protect his family, and to provide for them.

     Also as set forth **ante**, until recently Mr. Tahir was not able to secure steady employment, and it was only after he sought work out-of-state,             that he was finally hired on a full-time basis.  Nonetheless, while this job allows him to take care of his family, and to pay his daughter's college tuition so that she can remain in school,

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 11 of 15

and has not yet required him to relocate completely, it also entails long stretches away from his family during which he must travel to the company's headquarters        .

It is clear that the punishment Mr. Tahir has already suffered – loss of his business, near destitution, leaving his family without economic support for periods of time, physical and mental hardship to his loved ones and himself due to fear of retaliation and mistreatment in the community, and loss of time with his family due to the need to seek work out-of-state – is more than sufficient to deter Mr. Tahir from any future criminal conduct, and to deter others who might contemplate similar conduct.[9]

C.   *Mr. Tahir's Medical History*

Mr. Tahir suffers from a constellation of serious medical issues and has been treated regularly for these conditions by a physician based in Jersey City, where Mr. Tahir resides. As set forth in a letter from Mr. Tahir's physician,          , M.D., Mr. Tahir's "multiple medical problems" include hypertension, diabetes, and hyperlipidemia (which puts Mr. Tahir at high risk for cardiovascular disease), and require "regular" monitoring by his doctor. *See* Letter of          , M.D., attached hereto as Exhibit 1. Accordingly, Mr. Tahir has been prescribed medication which he takes on a daily basis to regulate these potentially life-threatening conditions, including Lisonopril for hypertension, Glucovance for his diabetes, and Simvastatin for his hyperlipidemia. *See id*.

Even prior to *Booker*, courts departed downward under §5H1.4 in cases in which the defendant sufficiently demonstrated that incarceration would jeopardize a defendant's medical

---

[9]   Recently, even the Attorney General has recognized the counterproductive nature of unnecessarily prolonged incarceration of non-violent first offenders, stating in a speech at the American Bar Association Annual meeting in San Francisco earlier this month, that

> [a]lthough incarceration has a significant role to play in out justice system – widespread incarceration at the federal, state and local levels is both ineffective and unsustainable. It imposes a significant economic burden– totaling $80 billion in 2010 alone – and it comes with human and moral costs that are impossible to calculate.

*See* August 12, 2013, Remarks by Attorney General Eric Holder at the Annual Meeting the American Bar Association's House of Delgates, available at <http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html>.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 12 of 15

condition and/or life.  For example, in *United States v. Gee*, 226 F.3d 885 (7th Cir. 2000), the District Court determined that "imprisonment posed a substantial risk to [the defendant's] life[,]" and departed downward.  *See also United States v. Johnson*, 71 F.3d 539, 545 (6th Cir. 1995) (under U.S.S.G. §5H1.4, although "rare," downward departure was possible for physician convicted of distribution of drugs and mail fraud based on the medical condition of the 65-year old defendant who suffered from diabetes, hypertension, hypothyroidism, ulcers, potassium loss, and reactive depression);  *United States v. Baron*, 914 F.Supp. 660, 662-665 (D.Mass. 1995) (in bankruptcy fraud, court departed downward from range of 27-33 months to probation and home detention for a 76-year old defendant with medical problems which could have been made worse by incarceration);  *United States v. Moy*, 1995 WL 311441, at *25-29, *34 (N.D.Ill. May 18, 1995) (downward departure granted based upon defendant's advanced age, aggravated health condition, and emotionally depressed state);  *United States v. Roth*, 1995 WL 35676, at *1 (S.D.N.Y. Jan. 30, 1995) (63-year-old defendant with neuromuscular disease had "profound physical impairment" warranting downward departure).

Mr. Tahir's medical conditions would serve to make any term of imprisonment far more onerous and dangerous for him, and they weigh strongly in favor of a sentence that does not include further incarceration.

### D. *Mr. Tahir Provides the Sole Means of Support For His Family and Its Financial Dependence on Him Constitutes Extraordinary Family Circumstances Warranting a Non-Incarceratory Sentence*

As detailed below, Mr. Tahir is the sole breadwinner in his family, singlehandedly supporting both his wife and his daughter, and therefore any term of imprisonment imposed on Mr. Tahir at sentencing would strip his family of their means of financial support, requiring them to either seek financial assistance from the government, or to leave the United States and return to Pakistan.

Accordingly, the substantial adverse consequences that Mr. Tahir's incarceration would have on his family members rises to the level of "extraordinary" in the context of either a formal downward departure under the Guidelines, or a non-Guidelines sentence pursuant to §3553(a), and requires that the Court impose a non-incarceratory sentence in this case.  *See United States v. Khan*, ____ F.Supp.2d ____, 2010 WL 610534, at *2 (E.D.N.Y. 2010); *see also United States v. Ayala*, 75 F.Supp.2d 126, 137-39 (S.D.N.Y. 1999) (defendant's uneducated and unemployed wife's inability to financially support herself and their children "falls well within" the definition of extraordinary family circumstances as established in this Circuit).

Indeed, if Mr. Tahir were to be incarcerated, it would be nearly impossible for his wife, , to obtain work and to continue to support herself;  nor would she be able to continue Mr.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 13 of 15

Tahir's efforts to pay for their daughter's college education. As set forth **ante**, although has lived with Mr. Tahir in the United States since 1995, she does not speak English fluently, and with the exception of some part time work at her husband's former company (which effectively shutdown in 2010), she has no employment history in the United States. *See* PSR, at ¶ 55.

Thus, she is likely to face extreme difficulty obtaining any sort of employment in the United States. Nor would Mr. Tahir's brother or his sister-in-law (their sole relatives in the United States) be able to assist Mr. Tahir's family financially. *See id*., at ¶ 58-59. Accordingly, Mr. Tahir's incarceration would leave his family without any means or support, and thus also likely prevent his daughter,         from continuing to attend college                        . *See id*., at ¶ 56.

Thus, as set forth **ante**, if Mr. Tahir, as the sole source of his family's income, is incarcerated, he "fears that . . . his wife and daughter will be compelled to return to Pakistan" despite having lived in the United States (as citizens), for the last 18 years. *See id*., at ¶ 57. Given the current volatility of the political situation in Pakistan, and the extreme poverty to which most residents, including Mr. Tahir's parents, have been reduced, such a move would be extremely detrimental to the well-being of Mr. Tahir's wife and child. *See id*., at ¶ 53. The additional impact of moving to Pakistan on Mr. Tahir's daughter, who has lived in the United States since she was three years old, would be devastating. *See id*., at ¶ 55.

Mr. Tahir's incarceration would also have adverse consequences for his parents, who, as discussed **ante**, currently reside in Pakistan. *See id*., at ¶ 52. Until recently, Mr. Tahir had been planning to bring his parents to the United States, and has only halted those plans as a result of this case, with the intention of recommencing his efforts once his case is resolved. *See id*. If Mr. Tahir is incarcerated, his parents will have to remain indefinitely in Pakistan, where they suffer from grave medical issues and reside in an area lacking even the most basic amenities, as Mr. Tahir's brother is currently unable to financially assist with their care, Mr. Tahir is thus the key to bringing them to the United States. *See id*., at ¶ 53, 59.

Given the far-reaching and devastating impact that Mr. Tahir's incarceration would have, a non-incarcerative sentence is necessary and appropriate to avoid a catastrophic ripple effect on innocent third parties. *See United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991). Accordingly, as Mr. Tahir is indispensable to his family's financial well being, such that incarceration would impermissibly "wreak extraordinary destruction" on innocent members of his family, this case presents the very definition of extraordinary family circumstances warranting a "time served" sentence. *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992).

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Denise L. Cote
United States District Judge
Southern District of New York
October 4, 2013
Page 14 of 15

**E.     *Any Further Term of Imprisonment Would Not Serve The Goals of Sentencing Pursuant to 18 U.S.C. §3553(a)(2) and Would Only Be Counterproductive***

Mr. Tahir's admirable and law-abiding behavior in the three years since his July 13, 2010, release on bail in this case, indicate not only a new trajectory in Mr. Tahir's life, but also his tremendous efforts to overcome the obstacles he has faced in his community and in finding work, in order to protect and to provide for his family adequately.

After three years Mr. Tahir was finally able to return his focus completely to his family in late Spring of this year, and to secure his first full-time position since his arrest.

If, however, Mr. Tahir were to receive an incarceratory sentence at this point, all of his hard work toward regaining financial stability and rebuilding his life will be lost. Indeed, as set forth **ante**, because Mr. Tahir is the sole breadwinner and his wife will almost certainly be unable to find work here, Mr. Tahir's wife and daughter may be forced to return to Pakistan, and his family will be broken up. Upon his release, Mr. Tahir will once again face the same struggles to secure employment, and will have to start anew in that grueling process of securing work.

Accordingly, any term of imprisonment at this point would not serve the purposes of sentencing set forth under §3553(a)(2), would interrupt Mr. Tahir's rehabilitation, and would thus be counterproductive.

**IV.     *Mr. Tahir's Objections to the Pre-Sentence Report***

Mr. Tahir's objections to the PSR are as follows:

(1)     ¶ 31, with respect to the loss amount which the PSR states is "more than $1,000,000 but not more than $2,500,000" and which equates to a base offense level of 23. Defense counsel has requested that the government provide an itemized list of the figures and properties used to calculate the loss amount under the Guidelines, in particular because the government's calculation of loss appears not to include the sale of at least one property – 60 Webster Avenue, Unit #401, in Jersey City, New Jersey, on August 12, 2011 – which resulted in a credit to the victim of $96,000, as a result of the sale. *See* Documentation of Sale of 60 Webster Avenue, Unit #401, attached hereto as Exhibit 2. The government has informed defense counsel that it will provide information regarding the figures used to calculate loss amount to counsel in advance of Mr. Tahir's sentencing. Should the government's list affect the loss amount we will inform the Court in

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Denise L. Cote<br>United States District Judge<br>Southern District of New York<br>October 4, 2013<br>Page 15 of 15 |

writing as soon as the documents are received; and

(2)   ¶ 37, with respect to the loss amount which the PSR states is "more than $1,000,000 but not more than $2,500,000" and which equates to a base offense level of 22. As set forth **ante**, defense counsel has requested that the government provide an itemized list of the figures and properties used to calculate the loss amount under the Guidelines, given that the government's calculation of loss appears not to include the sale of at least one property. *See* Documentation of Sale of 60 Webster Avenue, Unit #401 (Exhibit 2). The government has indicated that it will comply with that request, and will provide such information to defense counsel in advance of Mr. Tahir's sentencing. Also, as set forth **ante**, should the government's list affect the loss amount we will inform the Court in writing as soon as the documents are received.

## Conclusion

Accordingly, for all the reasons set forth above, and consistent with the recommendation in the PSR, it is respectfully submitted that Mr. Tahir should be sentenced to "time served."

Respectfully submitted,

Joshua L. Dratel

JLD/lal
Encls.

cc:   Daniel Goldman & Carolina Fornos
      Assistant United States Attorneys (by electronic mail)