UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 10 CR 923 (DLC)

ZUBAIR TAHIR,

Defendant.

------------------------------x

New York, N.Y.
December 9, 2010
10:31 a.m.

Before:

HON. MICHAEL H. DOLINGER,

Magistrate Judge

APPEARANCES

PREET BHARARA,
United States Attorney for the
Southern District of New York
DANIEL GOLDMAN
Assistant United States Attorney

JOSHUA L. DRATEL
Attorney for Defendant

(In open court)

THE DEPUTY CLERK: United States of America versus Zubair Tahir.

MR. GOLDMAN: Dan Goldman for the government.

THE COURT: Hello.

MR. DRATEL: Joshua Dratel for Mr. Tahir.

THE COURT: Good morning.

THE DEPUTY CLERK: You are Zubair Tahir?

THE DEFENDANT: Yes, I am.

THE DEPUTY CLERK: Have you signed this waiver of indictment?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Before you signed it, did you discuss it with your attorney?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Did your attorney explain it to you?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand what you are doing?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand that you are under no obligation to waive indictment?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand that if you do

not waive indictment, if the government wants to prosecute you, they will have to present this case to a grand jury?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Which may or may not indict you?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand that by signing this waiver of indictment --

THE DEFENDANT: Yes.

THE DEPUTY CLERK: -- you have given up your right to have this case presented to a grand jury?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand what a grand jury is?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Have you seen a copy of the information?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you waive its public reading?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: How do you plead?

THE DEFENDANT: Guilty.

THE COURT: One initial question that I have with regard to what's recited in the plea agreement, that is, a reference to restitution, is restitution an element in this case?

MR. GOLDMAN: Is it an element?

THE COURT: Yes. That is, is there going to be a required restitution?

MR. GOLDMAN: Yes, there will.

THE COURT: OK. And that will be to whom?

MR. GOLDMAN: We have not yet determined exactly to whom the restitution will go. It will be to a variety of lenders. We have to -- mortgages are often obviously sold to different people and stuff is paid back. We have to sort of follow the money to determine where it would go.

THE COURT: OK. By the way, do you have a ballpark estimate as to the amount of restitution?

MR. GOLDMAN: Well, the forfeiture amount is about 3 million.

THE COURT: Right.

MR. GOLDMAN: So I don't know. The restitution will certainly be less than that, but I really can't give a ballpark.

THE COURT: Very good, OK.

Mr. Tahir, the information in this case charges you with several violations of the United States criminal code. Ordinarily, when a defendant enters a plea to charges such as these, he will do so before a United States district judge, who will also conduct the required question-and-answer session that accompanies the plea. However, with the consent of the

defendant, United States magistrate judges, of whom I'm one, also have authority to take a plea in a case such as this. If you were to consent to entering your plea before a magistrate judge, you would receive all the same protections as you would have before a district judge. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Is it your wish at this time to enter your plea before a magistrate judge?

THE DEFENDANT: Yes.

THE COURT: Is this your signature on the consent form?

THE DEFENDANT: Yes.

THE COURT: Before I take your plea, I have to ask you some questions and I therefore need to put you under oath.

(Defendant sworn)

THE COURT: Would you please state your full name.

THE DEFENDANT: My full name?

THE COURT: Yes.

THE DEFENDANT: Robert Tahir.

THE COURT: What is your age?

THE DEFENDANT: 46 years old.

THE COURT: And what is the extent of your formal education?

THE DEFENDANT: Some college.

THE COURT: Are you now, or have you recently been,

under the care of a doctor or psychiatrist for any reason?

THE DEFENDANT: I am on prescription drugs, blood pressure and sugar.

THE COURT: Is there anything about either the conditions for which these medications are being taken or the medications themselves that make it difficult for you to listen, hear, think, reason or make decisions?

THE DEFENDANT: No.

THE COURT: Are you currently under the influence of any mind-altering drugs or alcoholic drinks?

THE DEFENDANT: No.

THE COURT: Have you been able to understand pretty much everything that has been said to you so far today?

THE DEFENDANT: Yes.

THE COURT: Have you received a copy of what appears to be the second superseding information in this case?

THE DEFENDANT: Yes.

THE COURT: Have you read it, or do you want me to read it to you?

THE DEFENDANT: No, I read it.

THE COURT: Do you understand what it says you did?

THE DEFENDANT: Yes.

THE COURT: Have you had the opportunity to discuss these charges and how you wish to plead today, with your attorney?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with your attorney?

THE DEFENDANT: Yes.

THE COURT: Are you ready at this time to enter a plea to the charges in the information?

THE DEFENDANT: Yes.

THE COURT: Let's turn first to Count One, which charges you in substance with having participated with others in a conspiracy to commit wire fraud. How do you plead to this conspiracy charge, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Now, Count Two charges you with having caused a financial institution to fail to file required so-called CTRs, or reports required under law relating to cash passing through such a financial institution.

How do you plead to this charge, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Because you're proposing to enter guilty pleas, I have to ask you some additional questions. The purpose is to ensure both that you understand the consequences of pleading guilty and also to be certain that your pleas are voluntary. First of all, I want you to understand that if convicted on Count One, which is a conspiracy charge, you could face as a maximum penalty a prison term of as long as 20 years, a supervised release term of as much as three years, a fine of

up to $250,000 or twice the total gain from the criminal conduct, whichever of those is larger, and a $100 mandatory special assessment. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that if convicted on Count Two, which is the CTR count, if you will, you could face a maximum penalty potentially of ten years in prison, three years of supervised release, a fine of up to $500,000 or twice the total gain from the criminal conduct and a mandatory special assessment of $100? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand also that if convicted on either/or both of these charges, you could as well face an order of restitution requiring that you compensate any victims of the crime and an order of forfeiture, under which you would have to give up any claim to the proceeds of the criminal conduct? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that if as part of your sentence you are placed on supervised release and you violate any of the conditions of that release, your supervised release term could be revoked and you could then face an additional term of imprisonment? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you have a right to plead not guilty to these charges and a right to a trial and indeed a jury trial if you wish?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if you pled not guilty and went to trial, the burden would be on the government to prove your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that at such a trial, you would be presumed innocent unless and until the government proved your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand as well that at such a trial you would be entitled to be represented by a lawyer at all stages, and if you could not afford to hire one, the services of an attorney would be provided without charge?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand also that at such a trial you would be entitled, through your attorney, to cross-examine any witnesses the government called to testify against you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that at such a trial you would be entitled to call witnesses to testify on

your behalf?

THE DEFENDANT: Yes.

THE COURT: Do you understand also that at such a trial you would be entitled to use the authority of the Court, through the issuance of subpoenas, to compel witnesses to come to court to testify for you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that at such a trial you would also be entitled, if you wished, to testify on your own behalf?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand as well that at such a trial you would not be required to incriminate yourself, that is, you would not be required to testify against yourself?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that by pleading guilty, you're giving up all of these rights, including a trial, and the only remaining step will be the imposition of sentence?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand the nature of the charge to which you're pleading guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand the range of penalties to which you are at least potentially subjecting yourself by your plea?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that if it turns out that any of the answers that you give to me today were untruthful, you could face a separate prosecution for perjury?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you still wish to plead guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have any threats of any kind been made to influence how you plead?

THE DEFENDANT: No.

THE COURT: Have any promises been made to you as to the sentence that you will receive in this case?

THE DEFENDANT: I just signed the agreement.

(Pause)

THE DEFENDANT: Oh, no.

THE COURT: Do you understand that the decision as to the appropriate sentence will be entirely up to the trial judge, Judge Cote, who will be guided only by what the law requires, including the so-called United States Sentencing Guidelines?

THE DEFENDANT: Yes.

THE COURT: Do you understand that even if you are shocked and disappointed at the sentence that you receive from Judge Cote, you will still be bound by your guilty plea?

THE DEFENDANT: Yes.

THE COURT: Now, before you made the decision whether to plead guilty or not, did you have the opportunity to have your attorney explain to you at least in general terms, how the sentencing guidelines work?

THE DEFENDANT: Yes.

THE COURT: Do you understand that when it comes time to sentence you, Judge Cote will be required to take the sentencing guidelines into consideration but will not necessarily be required to apply them directly to your case?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that even if Judge Cote applies the guidelines in your case and determines a sentencing guideline range for a prison term, she may choose, in appropriate circumstances, to impose a prison term that's either longer than the maximum of the sentencing guideline range or shorter than the minimum sentencing guideline range?

THE DEFENDANT: Yes.

THE COURT: Did you sign this plea agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before you signed it, did you discuss it with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Did he explain to you all of its conditions?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I note that as part of the agreement, you are agreeing to the forfeiture, that is, the surrender by you of any claim to a quantity of proceeds of criminal conduct that approximate, according to the plea agreement, $3,046,869. Are you aware of that?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that as part of this plea agreement, even if it turns out that the government has improperly withheld from your attorney information that would have been helpful to him in defending you at trial, you are giving up your right to complain about that form of government misconduct? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that as part of this plea agreement, even though, had the case gone to trial, you would have been entitled to have any physical evidence used by the government against you be subjected to DNA testing, under this agreement you're giving up that right? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Is your plea voluntary and made of your own free will?

THE DEFENDANT: Voluntary, yes.

THE COURT: Did you in fact commit the two crimes that are charged in the information?

THE DEFENDANT: Yes.

THE COURT: Before I ask Mr. Tahir to specify his conduct, I will request that the government briefly summarize the elements that it would have to establish at trial to sustain these two charges.

MR. GOLDMAN: As to Count One, conspiracy to commit wire fraud, there are three elements to the conspiracy: First, that there was an agreement or understanding among two or more people to accomplish a criminal or unlawful purpose; second, that the defendant knowingly and deliberately entered into that conspiracy; and, third, that any member of the conspiracy committed at least one overt act in furtherance of the objective of the conspiracy.

The objective is wire fraud, which also has three elements: First, the defendant knowingly devised or knowingly participated in a scheme or artifice to defraud or a scheme or artifice to obtain money or property by means of materially false or fraudulent pretenses or representations; second, the defendant did so knowingly and with the intent to defraud; and, third, that in advancing this scheme, the defendant used wires.

And then the second count, violation of Title 31, United States Code, Section 5324, has four elements: First, there was structuring or attempt to structure a transaction; second, with one or more domestic financial institutions; and, third, for the purpose of evading the currency transaction

reporting requirements or for the purpose of requiring the financial institution to fail to file the currency transaction reporting requirements; and, fourth, that the defendant did so knowingly, willfully, and unlawfully.

THE COURT: Thank you.

Now, Mr. Tahir, can you tell us in your own words what it is that you did that forms the basis for the charges to which you are now pleading guilty?

THE DEFENDANT: I sell the property and pay kickback to buyer.

THE COURT: I'm sorry, what did you say?

THE DEFENDANT: I sell property and I kick back money back to the buyer. And also the mortgage application was wrong, I knew it, he fill out the wrong -- false application.

THE COURT: Let's start at the beginning.

MR. GOLDMAN: Your Honor, could I have a moment, please?

THE COURT: Yes.

(Pause)

THE DEFENDANT: I participated in fraud to sell property to people who know were not -- to obtain mortgage.

MR. DRATEL: Qualified to obtain the mortgage.

THE DEFENDANT: Qualified to obtain the mortgage.

-- and I then another -- put the money in their account to buy the property, and also know the mortgage

application contain false information. Also some of the payment by when I kept under $10,000 to avoid reporting requirements.

THE COURT: Let's start at the beginning. You were selling property, correct?

THE DEFENDANT: Yes.

THE COURT: And you somehow were aware of the fact that the buyer was unlikely to get a mortgage unless the buyer falsified his mortgage application?

THE DEFENDANT: Yes. And also he doesn't have the down payment, so I give him the money to -- for the down payment to get obtain the mortgage.

THE COURT: And you did that with the knowledge that your giving him this down payment --

THE DEFENDANT: Yes.

THE COURT: -- would not be disclosed to the financial institution?

THE DEFENDANT: Exactly.

THE COURT: And did you understand that the information that was false and that was to be communicated to the financial institution would be communicated in some way by wires?

THE DEFENDANT: No. There was bank requirement to have some money, you know, down payment in his account, which they did not have it, so I put this money.

MR. DRATEL: I think he misunderstood your question, your Honor. If I may just --

THE COURT: Yes.

(Pause)

THE DEFENDANT: Involved wire transfer --

THE COURT: You're going to have to speak up. I can't hear you, and I'm sure the reporter can't either.

THE DEFENDANT: Yeah, the bank, when I sell the property, the bank send me the money, so I paid them kickback money by wire.

THE COURT: You paid kickback money to whom?

THE DEFENDANT: To the buyer.

THE COURT: OK. Now, you said something about structuring deposits, as I understand it, to be under $10,000?

MR. DRATEL: Payments to the --

THE COURT: To whom?

MR. DRATEL: -- payments to the straw buyers.

THE DEFENDANT: Yes, payments to the buyers.

THE COURT: And you did that in multiple payments, separate payments --

THE DEFENDANT: Yes, two payments.

THE COURT: -- to avoid any payment being above $10,000?

THE DEFENDANT: Yes.

THE COURT: And that was done for the purpose of

avoiding triggering the requirement that a report --

THE DEFENDANT: Yes.

THE COURT: -- be made of such a cash transaction?

THE DEFENDANT: Yes.

THE COURT: Approximately when did this occur?

THE DEFENDANT: That's happened in 2007, I believe.

THE COURT: And did any part of this activity take place either in Manhattan, Bronx, or Westchester?

THE DEFENDANT: Manhattan. Manhattan but not in Westchester.

MR. DRATEL: Yeah, Manhattan.

THE DEFENDANT: Not Westchester.

THE COURT: In Manhattan?

THE DEFENDANT: In Manhattan. One accountant was in Manhattan, yes.

THE COURT: OK. Are there any other questions that I should ask the defendant at this time?

MR. GOLDMAN: Not from the government, your Honor.

MR. DRATEL: No, your Honor.

THE COURT: Do either of you know of any reason why the plea should not be accepted?

MR. GOLDMAN: No, your Honor.

MR. DRATEL: No, your Honor.

THE COURT: I'm satisfied that Mr. Tahir understands the nature of the charges to which he's pleading guilty and the

consequences of his guilty pleas. I'm also satisfied that his pleas are voluntary and that there is a factual basis for both of them. I'm therefore recommending that Judge Cote accept the proffered pleas. I assume the government will order a copy of today's transcript proceeding and submit it together with any other necessary paperwork to Judge Cote so that she may act on this recommendation.

MR. GOLDMAN: Yes, your Honor.

THE COURT: Anything else at this time?

MR. DRATEL: Yes, your Honor. I would ask that the plea be sealed and docketing delayed until such further time that Judge Cote directs.

MR. GOLDMAN: That's fine. The government consents, your Honor.

THE COURT: OK, so we're asking simply that the transcript be sealed.

MR. DRATEL: Yes.

THE COURT: And that docketing be delayed until when?

MR. DRATEL: Judge Cote directs. We'll be in front of Judge Cote -- I guess March 11th is what I understand we've set as a control date.

THE COURT: Very well. Thank you.

MR. GOLDMAN: Thank you, your Honor.

MR. DRATEL: Thank you, your Honor.

* * *