DABPTAHS

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          10 CR 923 (DC)

 5   ZUBAIR TAHIR,

 6                  Defendant.

 7   ------------------------------x

 8                                          New York, N.Y.
                                            October 11, 2013
 9                                          10:11 a.m.

10
     Before:
11
                        HON. DENISE COTE,
12
                                            District Judge
13

14                           APPEARANCES

15
     PREET BHARARA,
16        United States Attorney for the
          Southern District of New York
17   BY:  CAROLINA F. FORNOS
          Assistant United States Attorney
18
     JOSHUA LEWIS DRATEL
19   LINDSEY LEWIS
          Attorneys for Defendant
20

21

22

23

24

25
```

DABPTAHS

1              (In open court)

2              (Case called)

3          MS. FORNOS:  Good morning, your Honor.  Carolina

4    Fornos on behalf of the United States, and with me at the

5    counsel table Agent Theresa McKeever from the FBI.

6          MR. DRATEL:  Good morning.  Joshua Dratel for

7    Mr. Tahir.  Mr. Tahir is standing next to me, and with me is

8    Lindsey Lewis of my office.

9          THE COURT:  Good morning, everyone.  Mr. Dratel, have

10   you and your client both read the presentence report?

11         MR. DRATEL:  We have, your Honor.

12         THE COURT:  And have you discussed it with each other?

13         MR. DRATEL:  Yes.

14         THE COURT:  Other than what might be contained in your

15   written sentencing submissions, do you have any other

16   objections to the presentence report?

17         MR. DRATEL:  No, your Honor.  We had submitted

18   something to probation.  They appear to have either been

19   incorporated or -- with respect to some of the financial

20   numbers.  We have reached an accord with the government; so

21   those are effectively withdrawn in that regard.  We have an

22   agreement and it's contained in writing in terms of the

23   forfeiture, the consent order of forfeiture, and sort of the

24   delineation of that.

25         THE COURT:  Thank you so much.  The presentence report

1     will be made part of the record in this case and placed under

2     seal.  If an appeal is taken, counsel on appeal may have access

3     to the sealed report without further application to this court.

4          I have before me a consent preliminary order of

5     forfeiture.  I'm not sure this should be preliminary anymore.

6     Miss Fornos?

7          MS. FORNOS:  Your Honor, yes, it should be a consent

8     order of forfeiture, your Honor.  Apologies.

9          THE COURT:  So the money judgment which the parties

10    have agreed to is the forfeiture of $2,923,869, and I will sign

11    the order now.

12         There have been a number of submissions to me in

13    connection with this case.  The defendant provided a submission

14    of October 4th, and I don't know if that's been filed on the

15    ECF system.

16         MR. DRATEL:  No, your Honor, due to some of the

17    sensitive matters in there.  If the Court wishes, we could do a

18    redacted one at some point.

19         THE COURT:  Yes.

20         MR. DRATEL:  Okay.

21         THE COURT:  So you need to give me a clean copy for

22    sealing, any pages that contain redactions, and you need to

23    file the redacted copy on the ECF system.  And I assume the

24    only redactions would be reference to the defendant's

25    cooperation?

DABPTAHS

1              MR. DRATEL:  Yes, and perhaps there's some personal

2      family stuff that -- we'll go through that.  I'm not sure if

3      that's -- also in terms of where he works now, things like that

4      that might identify his current whereabouts, in terms of job,

5      but we'll go through it, your Honor, and, obviously, not redact

6      beyond what's necessary.

7              THE COURT:  Well, there is guidance given in our ECF

8      rules with respect to proper redaction issues.

9              MR. DRATEL:  Right.

10              THE COURT:  And I don't know that his current

11      employment would be covered by that, and I don't have a showing

12      to suggest that that would be necessary.

13              MR. DRATEL:  Well, your Honor, part of the reason why

14      he had to seek employment outside this area, the metropolitan

15      area, because he's lived in New Jersey for some time, is

16      because of the effect of his cooperation in the community,

17      ostracism, people confronting him in public places; so that was

18      part of it.  So I just prefer that we not have to mention where

19      he is on that level.

20              THE COURT:  Any objection by the government?

21              MS. FORNOS:  No, your Honor.

22              THE COURT:  Okay.  I'll permit you to redact those

23      portions that mention the place and name of his current

24      employer.

25              MR. DRATEL:  Thank you, your Honor.

DABPTAHS

1        THE COURT:  You're welcome.  And, Mr. Dratel, could

2    you make those filings by Tuesday?

3        MR. DRATEL:  Yes, your Honor.

4        THE COURT:  Good.  And then I have a submission from

5    the government dated September 27th.  That hasn't been filed on

6    ECF either, I don't believe.

7        MS. FORNOS:  No, your Honor, it has not.

8        THE COURT:  And, Miss Fornos, have you provided us

9    with a separate copy for filing under seal?

10        MS. FORNOS:  No, your Honor, we have not, but we can

11    certainly do that.

12        THE COURT:  And, similarly, to the extent there are

13    portions here that can be filed in the public record, can you

14    do that, please, by Tuesday as well?

15        MS. FORNOS:  Yes, your Honor.

16        THE COURT:  Thank you.  Okay.  There is some

17    discussion about the restitution amount and what that proper

18    number should be, and the number that I have as a working

19    number is $723,056.21.  Is that the correct number?

20        MS. FORNOS:  I'm sorry, your Honor, can the Court

21    repeat that number?  It's the amount that's set forth in the

22    PSR.

23        THE COURT:  Okay.

24        MS. FORNOS:  We do not object to that.  Your Honor, my

25    apologies.  Can we go back to the 5K?  I was under the

DABPTAHS

1   impression that the 5K is never filed, even a redacted version

2   is never filed on ECF.  If the Court does want a redacted

3   version, it would be heavily redacted on ECF.

4                MR. DRATEL:  Your Honor, the --

5                THE COURT:  I think that the first two-and-a-half

6   pages probably don't require any redactions.

7                MS. FORNOS:  Certainly we can redact the bottom line

8   of the first paragraph, referencing that we're moving under 5K?

9                THE COURT:  Yes.

10               MS. FORNOS:  And we can certainly leave the

11   preliminary statement and the case background and redact the

12   remainder.

13               THE COURT:  Thank you.

14               MS. FORNOS:  Sure.  Thank you.

15               THE COURT:  My chambers called counsel to raise with

16   them a portion of the presentence report that referred to a

17   special condition about a prohibition on employment, and I have

18   received from counsel this morning a draft of a proposed

19   prohibition that reads as follows:  Defendant will not engage

20   in the business of buying or selling real estate for a profit,

21   including but not limited to refinancing real estate, brokering

22   loans, dealing in mortgages or constructing homes for sale.

23   Nothing in this paragraph is intended to preclude the defendant

24   from purchasing or refinancing his own home for purposes of

25   residing in that home or selling his personal residence.  To

DABPTAHS

1  the extent the defendant seeks employment to work in

2  construction, the defendant may do so subject to prior approval

3  of his probation officer.

4           Is there consent by the government to that special

5  condition?

6           MS. FORNOS:  Yes, your Honor.

7           THE COURT:  By you, Mr. Dratel?

8           MR. DRATEL:  Yes, your Honor.

9           THE COURT:  Thank you.  Why I raise the question about

10  the accuracy of the restitution amount, there was a defense

11  argument about a recouped loss; so again, Mr. Dratel will have

12  a chance to be heard on this issue, but I just want to flag it

13  so we're in agreement on the restitution amount.

14           So this is a case in which there is an agreement that

15  the guidelines range is 37 to 46 months, based on an offense

16  level of 21 and a criminal history category of I.  There is

17  also an anticipated motion pursuant to 5(k)(1.1) for me to

18  consider the defendant's substantial assistance to the

19  government not only in connection with the crime at issue, but

20  also a second scheme of which he became aware.  There are

21  additional 3553(a) factors that defense counsel has

22  highlighted, including the impact on the defendant's family,

23  his ostracism in the community and certain medical issues.

24           The presentence report at Page 14, and perhaps at

25  other places, raised questions about the defendant's finances

DABPTAHS

1    and whether we have a good RIP or not, money at his disposal,

2    and how he's currently conducting his life financially.  I

3    bring that to the parties' attention so they can address it, to

4    the extent they would like to.

5            There's a second issue that I'd like the parties to be

6    prepared to address, to the extent they would like to.  I'm

7    interested in knowing how strong the case that the government

8    had against the defendant was at the time of his arrest, and I

9    guess, the related aspect of that from the defendant's point of

10   view is really motivations for cooperating, what he understood

11   realistically his options were.  Again, the defendant doesn't

12   need to provide me with any information or argument, but I'm

13   just flagging this as something I am interested in.

14           As I understand it, the defendant's involvement in the

15   scheme concerned six properties, one of which was an apartment

16   building with four units.  There was structuring involved to

17   avoid reporting obligations to financial institutions or by

18   financial institutions and the use of straw buyers and

19   kickbacks.  I'll turn to the government.  Is there anything the

20   government wishes to say in connection with this witness?

21           MS. FORNOS:  Yes, your Honor.  There are things that

22   we want to say.  As the Court is aware, the defendant provided

23   substantial assistance to the government, and the details of

24   that assistance is set forth in the government's submission to

25   the Court.  What we do want to emphasize, your Honor, is that

DABPTAHS

1    in addition to his cooperation at the time of his arrest, that

2    directly led and facilitated the conviction of his

3    co-conspirators in the mortgage, the Court was asking about the

4    strength of the government's case.

5         The strength of the government's case at that time,

6    what we had was an historical case, a paper case, a financial

7    records case, and we did have a recorded conversation from the

8    defendant.  The defendant was not -- had a choice.  The

9    defendant had a choice at that time, and he chose to cooperate.

10   Your Honor, may I have one moment?

11        (Pause)

12        And what is notable, and Special Agent McKeever, who

13   is here -- and she was in charge of that investigation, and

14   that's why I am conferring with her to make sure that my facts

15   are accurately represented to the Court.  From the moment that

16   he was arrested in the car, Mr. Tahir started explaining the

17   facts of his involvement in this case.  That's very significant

18   because, at that point, the FBI was able to use his information

19   to continue to build its case and eventually successfully lead

20   to the arrest of his co-conspirators.

21        And we are now in a situation where all of those

22   co-conspirators have now been -- have pled guilty and have been

23   convicted by this Court.  It is certainly, without any doubt,

24   the defendant's cooperation directly led to all of those

25   co-conspirators pleading guilty.  My colleague, Dan Goldman,

1   handled that case.

2           And the reason I'm here before the Court, your Honor,

3   is because Mr. Tahir didn't just stop at that cooperation.  He

4   was approached -- Following his cooperation with respect to the

5   mortgage, he was approached by individuals to cash Treasury

6   checks.  He did the right thing, your Honor.  He didn't become

7   involved in that scheme.  He immediately contacted Special

8   Agent McKeever, and as a result of his information, we were

9   able to open an investigation.

10          But it wasn't just providing information, your Honor.

11  He worked proactively.  He went to meetings with these

12  individuals who were trying -- who had possession of fraudulent

13  treasury checks, and in our submission we state that it was

14  about 330,000.  It was actually closer, your Honor, closer to

15  $400,000, ultimately, that was recovered by the FBI in stolen,

16  fraudulent Treasury checks, which had been filed without the

17  knowledge of the original taxpayer.

18          And as a result, Mr. Tahir not only provided us that

19  information, but he also worked proactively with the FBI.  He

20  went to meetings.  He wore a recording device.  He was

21  debriefed by the FBI after these meetings.  His involvement and

22  his participation, without a doubt, your Honor, has been

23  substantial.  But for -- and we can say this.  But for his

24  initial tip to the FBI, the FBI would have never known about

25  this conspiracy.  And with his assistance, with his proactive

DABPTAHS

1    assistance, the FBI was able to ultimately charge -- we were

2    able to charge a total of four individuals.  All of those

3    individuals, your Honor, have pled guilty.  Three of them have

4    been sentenced.  One, the remaining defendant, will be

5    sentenced next week.

6         Notably, your Honor, his information directly led to

7    that case, which I prosecuted and I was involved in, and I am

8    very familiar with all the facts of that case and the work that

9    Mr. Tahir did with the FBI.  But we would also note that it was

10   Mr. Tahir's information that has now, indirectly, led to

11   several spinoff investigations, which are ongoing, and we will

12   just represent to the Court that these are significant

13   investigations, and it all originated from Mr. Tahir.

14        As such, we certainly submit to the Court that his

15   cooperation has been substantial, not just with the original

16   charges, where he immediately cooperated with the federal

17   government without even knowing all of the evidence that the

18   government had.  He enabled the FBI to make that case because,

19   as I previously indicated, the case was mainly financial.

20   We're talking about mortgage fraud.  It's the financing -- the

21   financial evidence that the FBI was pursuing.

22        Mr. Tahir did enable us to proceed and unravel the

23   entire scheme, but in addition, his proactive cooperation with

24   respect to the Treasury fraud scheme was significant, your

25   Honor.  And it is because of that that we ask that the Court

DABPTAHS

```
1    consider a departure from the guidelines, pursuant to 5(k).

2              THE COURT:  Mr. Dratel?

3              MR. DRATEL:  Yes, your Honor.  With respect to the

4    specific question about the genesis of the cooperation, at that

5    time and I was involved from the beginning so I can speak to

6    it, is that -- and without getting into privileged

7    conversations, but I can say that it wasn't my idea in the

8    sense that I had not seen discovery.  I had not had a chance to

9    evaluate the strength of the government's case.  It was

10   Mr. Tahir who was the engine of that cooperation.

11             In addition, in the context of discovering documents

12   at the beginning of that process, it was Mr. Tahir who actually

13   brought documents to the proffer sessions with the government

14   in the cooperation sessions, ultimately, after we had the

15   agreement, but even in those initial conferences, to go over

16   with the government those transactions and identify those that

17   were subject to prosecution, also those who were involved in

18   them and what the relative roles were of various people who

19   ultimately were charged or not charged, but that's, obviously,

20   the government's discretion.  So he was very much the engine of

21   that, and it certainly wasn't myself in that regard because,

22   like I said, I didn't have an educated opinion of what the

23   strength of the government's case would be.  So in that

24   context, it was a self-generated cooperation in that regard.

25             And so I think that answers the question.  I don't
```

DABPTAHS

1    know if there's anything else in that regard that the Court

2    wishes to hear at this time.

3          THE COURT:  No, no.  Thank you.  And this is your

4    opportunity, Mr. Dratel, to tell me anything you would like in

5    connection with this sentence.

6          MS. FORNOS:  Thank you, your Honor.  And I know the

7    Court has read the materials carefully; so I'm not going to

8    belabor them or repeat them.  I just sort of wanted to start

9    with the sort of the functional standard, which is sufficient

10   but not greater than necessary.  And in this context, I would

11   submit that sufficient but not greater than necessary would be

12   a non-jail term, either time served or probation or whatever

13   that would be.  I think that conforms with probation's

14   recommendation as well, and there are thee aspects of this that

15   I would point out in terms of projecting in the future, which I

16   would guess, not having been a judge but having done enough

17   sentences that I think it is a significant part of the equation

18   for fashioning a sentence, which is what's going to happen in

19   the future, what will this defendant's life be like not only

20   for himself but also for society.  That's what I'm trying to

21   focus on and give the Court a comfort level that is necessary

22   and sufficient for the purposes of that sentence.

23          One, is the cooperation itself in the sentence, that

24   it demonstrates remorse.  It demonstrates the wrongfulness of

25   his own conduct, and his willingness to right it as best he

could.  He can't go back and undo it, but he undid it in the

sense of helping the government to complete its investigation

of this conduct.

          The second is -- the second level of cooperation in

the sense that when the Court asks itself deterrent effect or

what's the necessary deterrent effect, here's someone who

spontaneously, based on his own moral and other calculous said,

no, I'm rejecting this opportunity to commit further crimes.

I'm going to go and tell the government about this and then

proactively work in it in a way that, obviously, subjected him

to a certain amount of jeopardy.

          And fortunately, nothing came of that; so that's good,

but it, obviously, generated another prosecution that was

important to the government.  He, obviously, has not committed

any offenses outside of that, even in the -- and we have a

period of time that's rather significant.  We have a

three-and-a-half year period now, I think, since the arrest, or

nearly three years -- I'm sorry, about three-and-a-half years

since the arrest, I think, that we have for the Court to sort

of get a sense of who he's going to be because he has been that

person now for three-and-a-half years and, obviously, one is

lack of committing any crimes; the second is the rejecting the

opportunity to commit an offense.

          And I think the third is also that his commitment to

leading the life he's leading now is manifested also in the

DABPTAHS

significant and unusual, in my experience, commitment he has
made to gainful employment, which is leaving his family for a
considerable period of time, going to another location with
which he was unfamiliar, but doing that so he could get gainful
employment that was good for him, good for his family, good for
his future.  And all of those factors evidence what the future
will be like for him.

In addition, there is a significant financial penalty
that is a lifetime penalty, to a certain extent, for Mr. Tahir
and that he's going to have to live with and fulfill, and
that's, again, another deterrent because the last thing he
wants is to add to that.  I mean, he's -- he has been cognizant
of the criminal justice system, what it can do to a person's
life and future, and has done what he can to try to ameliorate
that for himself and his family.  And going forward, all those
factors, it provides sufficient punishment.

And also in the other aspects that we put in our
letter, which is the ostracism, these difficulties, sorting
down more kernelized, in terms of his world, his family, those
close to him, and the ongoing financial commitment that he has
and the obligation that he'll have to the government for a
significant period of time, if not for his whole life.  If it's
less than his whole life, good for the government and good for
him, but I suspect that won't be the case.

I don't know if there's anything else that the Court

DABPTAHS

1  wishes to hear from me because it's all in the papers, and I

2  think that just all of these factors justify amply a sentence

3  of either time served or probation, and that Mr. Tahir has done

4  what he can to demonstrate that he does not require a jail

5  sentence to fulfill the objectives of sentencing.

6          THE COURT:  Thank you, Mr. Dratel.  Mr. Tahir, is

7  there something you would like to say to me on your behalf in

8  connection with sentence?

9          THE DEFENDANT:  Yes.  Good morning, your Honor.  First

10 of all, I'm very sorry.  I'm sorry from my heart what I did.  I

11 should not do this, and that's all I can say.

12         THE COURT:  So, Mr. Tahir, please stand.  Let me begin

13 by saying that you do deserve a jail term, but you know that.

14 What you did was terribly wrong.  It was a fraud.  It was a

15 corruption of individuals, the straw buyers.  It was stealing

16 money that didn't belong to you or those you were working with.

17 It was a wrongful scheme.  Even the Treasury check scheme has a

18 certain aspect that you would have been known in your community

19 as someone who was willing to break the law.  They came to you.

20         But that said, you have demonstrated an acknowledgment

21 of the serious nature of what you did.  I'm impressed that your

22 immediate response, when confronted by the FBI, was to

23 cooperate; that even before your lawyer could carefully

24 evaluate the strength of the government's case against you, you

25 continued your commitment to cooperation; that when you were

1    presented with another opportunity to engage in an illegal

2    scheme, you chose instead to inform the government.

3            I'm impressed by the fact that you've already paid a

4    price here beyond, of course, the burden of an ongoing

5    prosecution and the disruption that that presents in anyone's

6    life and the anxiety it produces for anyone.  You've suffered

7    within your community, which makes it more difficult for you

8    to, of course, engage in criminal activity again if you were

9    tempted to do so.

10           So what I'm going to do here is place you on

11   probation.  What that means is that during the period of

12   probation, if you violate the law in any way, you will come

13   back before me for sentence, and at that time, I would be free

14   and able to impose any sentence that I could have imposed

15   today.  Do you understand what I'm saying?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  So I'm going to give you a sentence of

18   probation for five years.  That's a long time.  I think we

19   should know in that period of time whether you've truly changed

20   your life around and made a commitment not to engage in further

21   criminal activity.

22           I want also to see a substantial repayment of the

23   restitution obligation here.  I want you to remain gainfully

24   employed and pay a percentage of your income every month

25   towards your restitution obligation.  That's part of your

DABPTAHS

1    sentence, and it's important to me that you feel in that way

2    the impact of your choices in the past.  You understand what

3    I'm saying?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  So I impose a sentence of five years'

6    probation with the following special conditions.  First, I

7    adopt the special condition previously read on the record, to

8    which counsel had consented.  You shall also report to the

9    probation office in this district within 72 hours.  You shall

10   not commit another federal, state or local crime.  You shall

11   not illegally possess a controlled substance.  You shall submit

12   to the regular drug testing program.

13             You are prohibited from possessing a firearm or other

14   dangerous weapon.  You shall cooperate in the collection of

15   DNA.  You must pay restitution.  You must comply with the

16   standard conditions of probation.  You must submit to a

17   reasonable search by the probation department.  You must seek

18   and maintain full-time employment.  You are to provide the

19   probation department access to any and all requested financial

20   information.  You may not incur any new credit card charge or

21   open any new credit line without approval of the probation

22   department.

23             You must notify the U.S. Attorney's Office for this

24   district within 30 days of any change of mailing or residence

25   address that occurs while any portion of restitution remains

1   unpaid.  You shall be supervised by the district of your

2   residence.  You shall pay a special assessment of $200.

3          I decline to impose a fine because of the burden of

4   restitution and forfeiture imposed upon you.  I've already read

5   the restitution amount into the record, but I'll read it again,

6   $723,056.21.  The victims are identified in the PSR and I adopt

7   them.  You must pay restitution at the rate of 10 percent of

8   your gross monthly income.

9          Counsel, is there any legal reason why I cannot impose

10  the sentence I've described as stated?

11         MS. FORNOS:  No, your Honor.

12         MR. DRATEL:  No, your Honor.

13         THE COURT:  I order the sentence I've described on the

14  record to be imposed as stated.  You may be seated, Mr. Tahir.

15  I believe there are open counts?

16         MS. FORNOS:  Your Honor, I don't believe there are any

17  open counts.  He pled to an information originally, and he was

18  originally charged by complaint.

19         MR. DRATEL:  Yes, your Honor, I believe that's the

20  case.  I'm almost positive, having just gone over last night

21  some of the -- yes, the plea minutes and all that.

22         THE COURT:  Thank you.  Well, Miss Rojas will check.

23  Just if there just happens to be an underlying indictment, the

24  government would move to dismiss those counts against this

25  defendant?

DABPTAHS

1          MS. FORNOS:  Yes, your Honor, absolutely.

2          THE COURT:  Thank you.  And the restitution

3   obligation, I should say, is imposed jointly and severally with

4   respect to coconspirators to whom it may apply?

5          MS. FORNOS:  Yes, your Honor.

6          THE COURT:  Thank you.  And is the government going to

7   get me a restitution order?

8          MS. FORNOS:  We can certainly provide that, your

9   Honor.

10          THE COURT:  Thank you.

11          MS. FORNOS:  And, your Honor, the forfeiture should

12   also be joint and sever -- the forfeiture amount should also be

13   joint and several with his co-defendants in this case.  To the

14   extent that hadn't been made clear, we do want the record to

15   reflect that it is joint and several with the co-defendants.

16          MR. DRATEL:  Yes, it should be, your Honor.

17          THE COURT:  Well, in the proposed order which was

18   given to me and which I executed at the beginning of this

19   proceeding, it doesn't state that it's imposed jointly and

20   several.

21          MS. FORNOS:  Your Honor, if I may, I'd like to orally

22   amend that order of forfeiture on the record to state that it

23   should be joint and several with the other defendants in this

24   matter.

25          THE COURT:  Thank you.

DABPTAHS

 1          MR. DRATEL:  No objection, your Honor.

 2          THE COURT:  Granted.  And I have so amended the order.

 3   I need to advise the defendant of his right to appeal.  I know

 4   of no ground for an appeal.  You've largely given up your right

 5   to appeal from the entry of the plea and, of course, the

 6   sentence that I've just imposed is a non-incarceratory

 7   sentence, but nonetheless, I'm required by law to advise you of

 8   the following.

 9          If you're unable to pay the cost of an appeal, you may

10   apply for leave to appeal in forma pauperis.  Any appeal of

11   sentence must be filed within 14 days of the judgment of

12   conviction.

13          Miss Fornos, is there anything else we need to do?

14          MS. FORNOS:  No, your Honor, not from the government's

15   perspective.

16          THE COURT:  Mr. Dratel?

17          MR. DRATEL:  No, your Honor.  Thank you.

18          THE COURT:  Thank you.

19          (Adjourned)

20

21

22

23

24

25